CK:RB
2008R001958

# M10- 726

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

MICHAEL LEVITIS,

          Defendant.

- - - - - - - - - - - - - - - - -X

COMPLAINT & AFFIDAVIT IN
SUPPORT OF ARREST WARRANT

(T. 18, U.S.C., §
1001(a)(2))

EASTERN DISTRICT OF NEW YORK, SS:

        KENNETH HOSEY, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), duly appointed according to law and acting as such.

        Upon information and belief, on or about January 6,
2010, within the Eastern District of New York, the defendant
MICHAEL LEVITIS did knowingly and willfully make materially
false, fictitious and fraudulent statements and representations,
in a matter within the jurisdiction of the executive branch of
the Government of the United States.

        (Title 18, United States Code, Section 1001(a)(2))

The source of your deponent's information and the grounds for his belief are as follows:[1]/

1.    I have been a Special Agent with the FBI since 1995, and have been assigned to Squad C-14, which investigates Public Corruption, since 1996.

2.    In 2008, Squad C-14 began investigating allegations that a public official ("Public Official") and a member of his staff ("Staff Member") were performing official acts in exchange for campaign contributions.  During the course of that investigation, I conducted or participated in physical surveillance, deployed confidential informants, debriefed cooperating witnesses, conducted interviews, and analyzed telephone records and recorded conversations.  The information set forth below is based on my knowledge of the investigation, including my review of recorded telephone conversations and meetings, cooperating witness debriefings, and interviews.

3.    On April 14, 2009, a confidential informant (CI) acting at my direction recorded a conversation with the defendant MICHAEL LEVITIS at a location in the Eastern District of New York.  Prior to the conversation, among other things, I instructed the CI to ask LEVITIS to arrange a meeting between the CI and the Staff Member.  During the conversation, the CI told

_____

[1]/    Because the purpose of this affidavit is merely to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

LEVITIS that he was in need of assistance from the Staff Member regarding an upcoming inspection at the CI's business.   Excerpts of the conversation follow:[2]

LEVITIS:   I'll call him [Staff Member], and we'll all have a... *meeting* with him.

CI:   A *meeting*, right?  Uh, alright. Alright.  Thanks a lot.

LEVITIS:   *No problem.*

CI:   He knows these (UI).  He solves these kinds of problems.  Yes, very well.  Well, then.  What... then next week...

LEVITIS:   But then, you'll have to do a *fundraiser* for him.  At your place.

CI:   Uh...(UI)

LEVITIS:   (UI)...you'll have to... get these arabs together (UI).

CI:   Oh, okay [chuckling].  Money, right?

UM:[3]   Yes, just checks... to gather your friends who own businesses... so that they write out checks to him...  That's all. *Fundraising.*

---

[2]  All conversations quoted herein are in draft form.  The conversations were translated from Russian by a professional translator working for the FBI.  Words that were spoken in English appear in italics.

[3]  I have reviewed the recording of this conversation with the individual identified as UM above, who confirmed that he took part in it, and that he, LEVITIS and the CI discussed fundraising for the Public Official.

CI:        Yes.

LEVITIS:   *Fundraising.*  You remember how...
           You were there when he [business
           owner-1] did it for [Public
           Official], right?

CI:        Yes, yes, yes, yes... (UI) Yes.
           Yes. (UI)

LEVITIS:   (UI) Yes.  Yes.  That's how it
           was (UI).

CI:        The same.  There's gonna be big
           sums probably...

LEVITIS:   Huh?

CI:        [Business owner-1] probably gives
           big sums...Twenty thousand or...
           something.

LEVITIS:   I think it can be done for
           less... new...(UI)

CI:        (UI) Less... (UI)

LEVITIS:   (UI) If less... I mean, I'll talk
           to him [Staff Member].  First,
           let him... let... let him take
           care of it first.

CI:        Yes.  I know he helped [business
           owner-2] a lot also.

LEVITIS:   He helped a lot.

CI:        A lot, right...

LEVITIS:   To start off, you'll have to
           throw in a few thousand.  To
           start off.

CI:        Uh, to start off...

LEVITIS:   And then, if he solves your
           problem...

CI:        Yes...

LEVITIS:   Depends on whether the problem is
           big or small... How much work he
           has put in...

CI:        Alright.

4.    On April 22, 2009, acting at my direction, the CI
recorded another conversation with the defendant MICHAEL LEVITIS
at a location in the Eastern District of New York.  Prior to the
conversation, among other things, I again instructed the CI to
ask LEVITIS to arrange a meeting for the CI with the Staff
Member.  I also instructed the CI to determine if the Staff
Member would accept a cash payment on behalf of the Public
Official.  During the meeting, LEVITIS and the CI agreed that the
CI would provide $3,000 cash to LEVITIS at a later date.  LEVITIS
stated that he would give $2,000 of that money to the Staff
Member and keep the remaining $1,000 for himself.

5.    On April 27, 2009, acting at my direction, the CI
recorded a conversation with the defendant MICHAEL LEVITIS at a
location in the Eastern District of New York.  Prior to the
conversation, the CI was provided with $3,000 cash by the FBI.
Among other things, I instructed the CI to pay the $3,000 to
LEVITIS.  Excerpts of the conversation follow:

CI:        It's good.  Then it will be like
           a, what is it called - a
           *fundraiser*.  [LEVITIS laughing]
           You don't want to?

LEVITIS:       So far, you don't need a
               *fundraiser*.  God forbid, if you
               are going to have problems...

CI:            Yes.

LEVITIS:       ...then you'll have to do it.
               You don't need it for now...

                    ******

CI:            Okay.  So, it's like we agreed?
               1000 for you and 2000 for him?

The CI then provided $3,000 cash to LEVITIS.  The transaction was
captured on video.

          6.  On September 18, 2009, acting at my direction, the
CI recorded a conversation with the defendant MICHAEL LEVITIS at
a location in the Eastern District of New York.  Prior to the
conversation, among other things, I instructed the CI to discuss
what actions the Staff Member had taken to assist the CI in
connection with a hearing the CI was scheduled to have with a New
York State agency.  Excerpts of the conversation follow:

CI:            Good.  How are things with you?

LEVITIS:       Good.  *So, I just talked with
               [Staff Member].  He said that he
               called there.  They moved the
               hearing back two weeks.*

CI:            Yeah?

LEVITIS:       So for now you can still work.

                    ******

CI:            And what with [Staff Member]...
               what will we... when... he'll

solve the problem there, right?
My *lawyer'll* call him, call him
and solve the problem.  And then
we'll see what's what.

LEVITIS:     He asked that you do a
             *fundraiser.*  I said, "Help
             first."

CI:          Yeah.  I'll do it.  Yes I'll do
             a *fundraiser* for him.

LEVITIS:     Then we'll do it.

CI:          Yes.

LEVITIS:     I said, "First, *let's see what
             you can do."*

CI:          Yeah, yeah, I can.  Because
             October... business is starting
             now...

LEVITIS:     First let... all the problems be
             resolved...

CI:          Yeah and we'll do...

LEVITIS:     But he wants you to do a
             *fundraiser* at [LEVITIS'S
             business].  But he wants you to
             do it.

CI:          *Fundraiser* at [LEVITIS's
             business]?

LEVITIS:     I, I don't care.  If you want,
             do it at your place.  *I don't
             care.*  First, let everything get
             resolved and then... then we'll
             decide where.

CI:          Okay, good.

7.   On January 6, 2010, the defendant MICHAEL LEVITIS

was interviewed by the FBI at his residence in the Eastern

District of New York.  During the interview, LEVITIS was asked if he and the CI ever discussed holding a fundraiser.  LEVITIS stated that he did not discuss having a fundraiser with the CI.

8.    When asked if he had any financial dealings with the CI, the defendant MICHAEL LEVITIS, who is a practicing attorney, stated that he may have received a few hundred dollars from the CI for an hour of legal advice regarding a lawsuit. LEVITIS did not recall if the CI paid by check or paid cash but indicated that he likely paid by check because LEVITIS said that he rarely takes cash.

9.    The defendant MICHAEL LEVITIS was then advised that he had provided false statements during the interview for which he could be charged with a federal felony for lying to the FBI.  He did not change or amend his statement.

WHEREFORE, your deponent respectfully requests that a warrant issue for the defendant MICHAEL LEVITIS so that he may be dealt with according to law.

KENNETH HOSEY
Special Agent
Federal Bureau of Investigation

Sworn to before me this
23rd day of June, 2010

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK